UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


STEVEN G. DUNBAR,

             Plaintiff,               CIVIL ACTION NO. 04 CV 73535 DT

        v.                   DISTRICT JUDGE LAWRENCE P. ZATKOFF

JO ANNE B. BARNHART,        MAGISTRATE JUDGE VIRGINIA M. MORGAN
COMMISSIONER OF
SOCIAL SECURITY,

             Defendant.
_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

This Social Security Disability case comes before the court on the parties' cross-motions
for summary judgment.  For the reasons stated herein, the court recommends that the
Commissioner's motion be **GRANTED** and that plaintiff's motion be **DENIED**.

### II.  Background

Plaintiff sustained a back injury in 1996 during the course of his employment as an
installer for a flooring company.  (Tr. 118)  An MRI revealed that he had a bulging disc at the
L4-L5 level on the left side with foraminal stenosis and lumbar spinal stenosis, as well as a
ruptured disc at the L5-S1 level on the left side.  Id.  Due to continuing pain in his back and the

-1-

failure of conservative treatment measures, plaintiff underwent a lumbar laminectomy on February 16, 1997.  Plaintiff was 31 years of age at the time of the surgery.

In September, 1997, plaintiff resumed working, and he remained employed in a number of food service, driving, sales, and other jobs on a full and part-time basis, with intermittent periods of unemployment, until approximately February of 2002.  (Tr. 8, 69)  However, plaintiff continued to experience back pain, as well as associated weakness and numbness, throughout that time period.  Due to continuing difficulties with his back, plaintiff underwent a second lumbar laminectomy at the L4-5, L5-S1 levels, with fusion, on March 26, 2001.  (Tr. 246-49)  Post-surgical treatment notes indicate that plaintiff's back condition improved in the months immediately following the surgery.  (Tr. 256-64)  Subsequent treatment notes indicate, however, that plaintiff soon again began complaining of chronic low back pain.  Dr. Setti Rengachery, the surgeon who performed the second laminectomy, opined on April 4, 2002, that plaintiff's continuing back pain was a result of failed fusion at the L4-L5 and L5-S1 levels and that further surgical intervention might be necessary to relieve plaintiff's symptoms.  (Tr. 250)  Plaintiff declined to undergo further surgery.  Despite physical therapy, pain clinic treatment, and the use of numerous analgesic and narcotic pain relieving medications, plaintiff continued to report to his doctors following the second surgery that he was experiencing severe lower back pain, as well as pain and weakness in his extremities.  In addition to his back problems, plaintiff was diagnosed with bi-lateral carpal tunnel syndrome, a chronic dysthemic disorder, depression, and an anxiety disorder.  (Tr. 143, 145, 303, 341)

Plaintiff filed an application for Social Security Disability Insurance Benefits (DIB) on March 21, 2002, claiming that he was disabled due to his back condition, carpal tunnel syndrome, and foot pain related to nerve problems, with a disability onset date of February 7, 2000.  (Tr. 68)  Following the initial denial of his application by the Social Security Administration (SSA), plaintiff requested a hearing before an administrative law judge (ALJ).  (Tr. 19-28)  The hearing was held on June 30, 2004.  (Tr. 351-414)  On August 26, 2004, the ALJ issued a decision denying plaintiff's claim.  (Tr. 5-18)  The ALJ determined that plaintiff had one or more "severe" impairments within the meaning of 20 C.F.R. § 404.1520, but that he did not have an impairment that met or equaled any impairment listed in Appendix 1, Subpart P of the Social Security Regulations.  (Tr. 21- 22)  The ALJ concluded that plaintiff, notwithstanding his impairments, had the residual functional capacity (RFC) to perform light and sedentary work with the following restrictions/requirements: no lifting, pushing, or pulling of more than 15 pounds, a sit/stand option with the opportunity to rest for 15 minutes every two hours, and no repetitive bending, twisting, or stooping.  (Tr. 17)  Based on the hearing testimony of a vocational expert (VE), the ALJ concluded that there were a significant number of light and sedentary jobs in the Detroit metropolitan area that plaintiff could perform.  Id.  The ALJ cited the following examples: courier, shipping and receiving, stock and order filler, security guard, food preparation, and cashier.  Id.  Accordingly, the ALJ found that plaintiff was not "disabled" within the meaning of the Social Security Act.  Id.

Plaintiff's case was randomly selected for participation in a simplified appeals process under which a claimant could directly file suit in federal court for review of the ALJ's decision

rather than first filing a request for review with the SSA's Appeals Council, as in the typical case.  (Tr. 5)  Accordingly, on September 13, 2004, plaintiff filed suit for judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  As noted above, the parties have filed cross-motions for summary judgment.  Plaintiff contends in his motion that the ALJ's conclusion that his back impairment met the previous listing for spine disorders, 20 C.F.R. Pt. 404, Subpt. P., App. 1, 1.05, was sufficient to establish disability at step five of the disability determination process.  Plaintiff otherwise contends that the ALJ's decision is not supported by substantial evidence.  The Commissioner contends in her motion that the ALJ's decision is supported by substantial evidence and should thus be affirmed.

**III.  Legal Standards**

**A.  Disability Evaluation**

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

-4-

42 U.S.C. § 423(d)(2)(A).  The claimant bears of the burden of proving that he is disabled.

Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate DIB claims.  20 C.F.R. § 404.1520.  As discussed

in Foster, 279 F.3d at 354 (citations omitted), this process consists of the following:

> The claimant must first show that she is not engaged in substantial
> gainful activity.  Next the claimant must demonstrate that she has a
> "severe impairment."  A finding of "disabled" will be made at the
> third step if the claimant can then demonstrate that her impairment
> meets the durational requirement and "meets or equals a listed
> impairment.  If the impairment does not meet or equal a listed
> impairment, the fourth step requires the claimant to prove that she
> is incapable of performing work that she has done in the past.
> Finally, if the claimant's impairment is so severe as to preclude the
> performance of past work, then other factors, including age,
> education, past work experience, and residual functional capacity
> must be considered to determine if other work can be performed.
> The burden shifts to the Commissioner at this fifth step to establish
> the claimant's ability to do other work.

## B.  Standard of Review

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g),

which provides, in part:

> Any individual, after any final decision of the Commissioner of
> Social Security made after a hearing to which he was a party,
> irrespective of the amount in controversy, may obtain a review of
> such decision by a civil action commenced within sixty days after
> the mailing to him of notice of such decision or within such further
> time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's

findings are supported by substantial evidence and whether the ALJ applied the proper legal

standards. <u>Brainard v. Secretary of HHS</u>, 889 F.2d 679, 681 (6th Cir. 1989); <u>Key v. Callahan</u>,

109 F.3d 270, 273 (6th Cir. 1997).  The Sixth Circuit stated in <u>Brainard</u>, 889 F.3d at 681, that

"[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance

and is such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." Further, "the decision of an ALJ is not subject to reversal, even if there is

substantial evidence in the record that would have supported an opposite conclusion, so long as

substantial evidence supports the conclusion reached by the ALJ."  <u>Key</u>, 109 F.3d at 273.

**IV.  Analysis**

**A.  Spine Disorder Listing**

As noted above, at the third step of the sequential disability evaluation process, the ALJ

must determine whether the claimant's impairment meets or equals an impairment listed in 20

C.F.R. Pt. 404, Subpt. P. App. 1.  If the ALJ determines that the claimant's impairment meets or

equals a listed impairment, the claimant is deemed "disabled" within the meaning of the Social

Security Act.  <u>Foster</u>, <u>supra</u>, 279 F.3d at 354.  In the matter before the court, the ALJ made the

following step-three determination regarding plaintiff's back impairment:

> The third step requires determining whether the claimant's
> condition meets or equals an impairment listed in Appendix 1 to
> Subpart P, Regulations No. 4.  These standards are not satisfied.
> For example, Mr. Dew, the claimant's attorney, argued that his
> client's back condition satisfies the listing standard for this
> disorder (1.05C) that immediately preceded the present standard
> (1.04A), which has been in place since February 19, 2002.  The
> argument is somewhat curious.  Presumably, one would not argue
> that an old standard was satisfied if the new standard was met....
> Nevertheless, in taking this approach perhaps Mr. Dew hoped to
> create an implication that if an old listing standard is met then it

-6-

> would be that more reasonable to at least find the claimant disabled
> at step 5 of [the] sequential evaluation.  Although the argument has
> a certain appeal to it, there is nothing in the disability standards
> that formally create [sic] such a linkage.  Further, the evidence
> does not show that either the old 1.05C or the present 1.04A
> standards are met.

(Tr. 9)

Taking a cue from the ALJ, plaintiff contends that a finding of "disabled" at step five of the disability evaluation process was warranted based upon the ALJ's finding that his back impairment met the old listing standard for spine disorders.

Plaintiff's argument is flawed in two respects.  First, contrary to the assertions made by plaintiff in his brief, the ALJ quite clearly found that plaintiff's back impairment *did not* meet the former listing.  Second, even if plaintiff's back impairment met the former listing for spine disorders, he has failed to cite any authority, regulatory or otherwise, in support of his contention that a finding of disabled would be warranted at step five based solely upon a determination that the former listing was met.  The court finds plaintiff's argument to be wholly unpersuasive.

### B.  Substantial Evidence

Plaintiff does not challenge the ALJ's findings at the first four steps of the sequential disability evaluation process.  Thus, the question before the court is whether there is substantial evidence in the record to support the ALJ's step-five determination that plaintiff retained the capacity to engage in substantial gainful activity in spite of his impairments.  Substantial evidence to support such a finding "may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately

portrays [plaintiff's] individual physical and mental impairments.'"  <u>Varley v. Secretary of</u>

<u>Health and Human Services</u>, 820 F.2d 777, 779 (6th Cir. 1987)(citations omitted).

      At the hearing, the ALJ posed the following hypothetical question to the VE:

> **ALJ**: Taking someone of Mr. Dunbar's age, which is range from
> 34 to 38, 14 years of education, work experience as you've
> described it....  He can lift, push and pull no more than 15 pounds,
> needs a sit/stand option with the opportunity to rest every two
> hours for 15 minutes.  No repetitive bending, twisting, or stooping.
> Are there any jobs such a person like that could perform?
>
> **VE**: You Honor, there are and I'll [sic] providing numbers in the
> standard metropolitan statistical area for Detroit, Michigan.
>
> **ALJ**: Okay.
>
> **VE**: There are 2100 courier positions.  1100 shipping and
> receiving clerks, 3400 stock and order filler positions, 1400
> security guards, 3700 – I'm sorry, I'm not going to go to that job.
> Excuse me, 1100 food preparation workers.

(Tr. 399).[1]  Based upon the foregoing hypothetical, which reflected the ALJ's RFC

determination, and the VE's answer thereto, the ALJ concluded that there were a significant

number of jobs in the national economy that plaintiff could perform and, therefore, that he was

not disabled within the meaning of the Social Security Act.  Plaintiff contends that the

hypothetical did not accurately portray all of his physical and mental limitations and, therefore,

that the VE's testimony could not properly form the basis for a finding that he is not disabled.

---

     [1]The ALJ posed a second hypothetical in which she included restrictions of sedentary
work and lifting of no more than five pounds.  However, the ALJ ultimately concluded that the
greater restrictions were not warranted.

The ALJ based her RFC determination and the hypothetical upon the assessment of Dr. Rengachery, who specified the following limitations in a report dated September 6, 2001: "sit and stand job only with 15 minutes of rest every two hours; no repetitive bending, twisting or stooping; no lifting, pushing, or pulling in excess of 15 lbs." (Tr. 256) The ALJ expressly stated that Dr. Rengachery's opinion "was given considerable weight: it is not a coincidence that the residual functional capacity assessment reached herein exactly mirrors this medical source statement." (Tr. 15) Plaintiff contends that the ALJ's reliance on Dr. Rengachery's assessment was erroneous for a number of reasons.

First, plaintiff contends that the ALJ failed to accord proper weight to the opinion of Dr. Jagdish K. Sachdeva, who, like Dr. Rengachery, was a treating physician. Dr. Sachdeva stated in a report dated December 2, 2003, that plaintiff "continues to experience back pain on prolonged walking and sitting. He is not able to hold on to any job or gainful employment." (Tr. 125) Plaintiff argues that Dr. Sachdeva's "opinion" that he could not engage in any gainful employment is consistent with the record as a whole and should thus have been accorded greater weight. The court disagrees.

"In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." Walters v. Commissioner of Social Sec., 127 F.3d 525, 529-30 (6th Cir. 1997). Indeed, 20 C.F.R. § 404.1527(d)(2) provides that a treating source's opinion regarding the nature and severity of a claimant's condition is entitled to controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in

the record.  However, as is suggested by the regulation, the ALJ is not bound by a treating

physician's opinion if that opinion is not supported by sufficient clinical findings or is otherwise

inconsistent with other substantial evidence in the record.  See Walters, 127 F.3d at 530.

      Applying these standards, the court cannot say that the ALJ erred in failing to accept Dr.

Sachdeva's opinion over that of Dr. Rengachery.  As an initial matter, it is questionable whether

Dr. Sachdeva's statement that plaintiff "is not able to hold on to any job or gainful employment"

even constitutes an "opinion" for the purposes of the treating physician rule.  Rather, given the

context of the report and the language of the statement, it appears that Dr. Sachdeva was merely

documenting or recounting plaintiff's own subjective assessment of his ability to work.  In any

event, even if Dr. Sachdeva's statement constitutes an opinion, he gives no basis for the opinion

and, as noted by the ALJ, the physical examination findings included in the report certainly do

not support a conclusion that plaintiff could not work as a result of his back condition.

Moreover, Dr. Rengachery was also a treating physician.  Thus, the ALJ had before her

contradictory opinions rendered by two treating physicians.  In reviewing the ALJ's decision, it

is not the role of the court to resolve conflicts in the evidence.  Rather, the court's role is limited

to determining whether the ALJ's decision is supported by substantial evidence.  Foster, supra,

279 F.3d at 353.  The ALJ considered Dr. Sachdeva's "opinion" and set forth a number of

reasons why she found Dr. Rengachery's findings to be more persuasive.  The ALJ reasonably

resolved this conflict in the evidence, to the extent such a conflict even existed, and her

resolution is entitled to deference given the limited scope of the court's review.[2]  For the

foregoing reasons, the court finds that the ALJ did not err in declining to give greater weight to

the statement of Dr. Sachdeva contained in the December 3, 2003 report.

Plaintiff also contends that the hypothetical was deficient because the ALJ included no

reference therein to his mental impairments.  Plaintiff was diagnosed with a chronic dysthemic

disorder, depression, and an anxiety disorder.  The ALJ considered the medical evidence

regarding these diagnoses and determined that plaintiff's mental impairments did not impose any

significant limitations on his ability to engage in substantial gainful activity.  (Tr. 9-10)

Accordingly, the ALJ did not include any specific mental limitations in her RFC determination

or in the hypothetical she posed to the VE.  An ALJ is not required to specifically reference a

claimant's impairments in a hypothetical.  As the Sixth Circuit stated in Webb v. Commissioner

of Social Sec., 368 F.3d 629, 633 (6th Cir. 2004), "a hypothetical need only reference all of a

claimant's limitations, without reference to the claimant's medical condition."  Thus, to the

extent plaintiff argues that the hypothetical was deficient by virtue of the ALJ's failure to inform

the VE of plaintiff's mental impairment diagnoses, the argument is without merit.  Further,

plaintiff points to nothing in the record indicating that he is significantly limited as a result of his

mental impairments.  Though plaintiff was referred for psychiatric consultation, there is no

_____

[2]Plaintiff suggests that Dr. Rengachery's September 6, 2001 functional assessment is contradicted by his February 28, 2002 statement that plaintiff "because of continued pain...has not been able to work" and, therefore, that Dr. Rengachery's functional assessment should be discredited.  As with Dr. Sachdeva's "opinion," this statement does not appear to be an "opinion" at all.  Rather, it appears to be a recitation of plaintiff's own assessment of his ability to work.  Moreover, as the ALJ noted, there is nothing in Dr. Rengachery's treatment notes indicating that his opinion of plaintiff's functional capacity changed after September 6, 2001.

indication that he ever sought psychological treatment, and the record indicates that he declined

psychological services on at least one occasion.  (Tr. 134, 201)  After he filed his application,

plaintiff was sent for a consultative psychological examination.  At the hearing, he questioned

why he was sent for such an exam.  (Tr. 358)[3]  Following the examination, the consulting

psychiatrist prepared a report in which he noted that plaintiff's mood was depressed and that his

affect was sad and "getting tearful," but that plaintiff was capable of functioning independently

and appropriately, that he was social and friendly, that his speech was spontaneous, logical, and

goal directed, that he was oriented to place, person, and time, and that he was able to recall five

digits forward, four digits backward, and three out of three objects after three minutes.  (Tr. 302-

03)  The psychiatrist diagnosed plaintiff with a chronic dysthemic disorder and gave him a

Global Assessment of Functioning (GAF) score of 55, which suggests "moderate symptoms

(e.g., flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in

social, occupational or school functioning (e.g., few friends, conflicts with co-workers)."  (Tr.

303); Diagnostic and Statistical Manual of Mental Disorders, 4th Ed. (DSM IV).  A state agency

medical consultant concluded that plaintiff had moderate restrictions in the area of activities of

daily living, moderate difficulties in maintaining social functioning, moderate difficulties in

---

[3]Plaintiff testified as follows regarding the consultative exam:

> When I first started my disability case and I filled out all the
> paperwork and I sent it in and you guys had sent me to a doctor,
> which I thought was supposed to be a muscle skeletal doctor and it
> was a psychologist that doesn't even care about my back.  I mean I
> don't understand.  The problem is with my bones, but you know I
> don't understand what that was about.

(Tr. 358)

-12-

maintaining concentration, persistence, or pace, and that he had experienced no episodes of

decompensation.   (Tr. 314)  The ALJ found however, that neither the GAF score of 55 nor the

findings of the state agency consultant were justified based on the record as a whole.  The court

agrees.  There is no indication in the record that plaintiff ever reported to any of his physicians

any concentration difficulties, difficulties in social functioning, or any other functional

limitations related to his mental condition, and there is otherwise nothing in the record indicating

that plaintiff's mental impairments resulted in significant functional limitations.  Given

plaintiff's treatment history, or the lack thereof, and the absence from this extensive medical

record of any indication that plaintiff was functionally limited as a result of his mental

impairments, the court finds that the ALJ did not err in declining to include in the hypothetical

restrictions related to those impairments.

Further, plaintiff claims that the ALJ erred in assessing his credibility and that if the ALJ

had reached a proper determination as to his credibility, a finding of "disabled" would have been

warranted.  The ALJ concluded that plaintiff's "allegations were not entirely incredible as

outlined in the decision."  (Tr. 17)  In the body of the opinion, the ALJ stated the following

regarding plaintiff's credibility:

> The extent of medical intervention in this case, and treatment, is
> considerable and is a distinct factor weighing in favor of a
> disability claim.  Also the claimant's allegations appear for the
> most part to be measured ones, without obvious examples of
> describing circumstances in the most favorable light and in
> artificially extreme terms, as is sometimes seen.  Additionally,
> with the notable specific exception of his alleged difficulties with
> his hands on a subjective level, his description of his problems
> given to treating sources is roughly concordant with what he has

-13-

related in connection with his disability claim. It is somewhat troubling that despite his surgeon's quite insistent urging to give up smoking to facilitate the healing of his back and his professions of considerable back pain, the claimant has made no apparent concerted effort to give up cigarettes and is known to have been continuing to smoke two packs a day well after the surgery. Also, there are a number of references to the fact that the claimant was doing "very well" and doing "fine" in the second half of 2003 and January 2004, yet this apparent progress was acknowledged in the claimant's testimony. Finally, as related above, the claimant has apparently not disclosed all pre and post onset work, but this is probably a matter of the difficulty of keeping track of all the job changes rather than deliberate concealment. Overall the frictions in the record are at the margins and it cannot be said that there are core contradictions that decisively undermine the claimant's credibility. However, the residual functional capacity assessment is accommodating of the allegations.

(Tr. 16)

"There is no question that subjective complaints can support a claim for disability, if there is also objective evidence of an underlying medical condition." Jones v. Commissioner of Social Sec., 336 F.3d 469, 475 (6th Cir. 2003). However, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." Id. at 476. Further, an ALJ's credibility determination is entitled to significant deference, particularly in light of the fact that the ALJ has had an opportunity to observe the claimant's demeanor. Walters, supra, 127 F.3d at 531.

Here, there is no question that there is objective medical evidence in the record establishing that plaintiff has a severe back impairment that significantly restricts his physical activities. It further appears from the record that his pain is chronic and has not responded well to treatment. The ALJ acknowledged as much, concluding that plaintiff's allegations were

-14-

largely credible, but that he was not so limited as to be unable to engage in all substantial gainful activity.  As discussed further below, the court finds that there is sufficient evidence in the record to support the ALJ's determination that plaintiff's allegations were not fully credible.

While there is no doubt that plaintiff experiences pain and is significantly limited by his back condition, there is no mention in the record of any muscle atrophy or prolonged muscle spasms related to his condition, and only minimal mention of any range of motion limitations. See, e.g., Blacha v. Secretary of Health and Human Services, 927 F.3d 228, 231 (6th Cir. 1990)(noting that muscle atrophy typically associated with severe pain); see also, e.g, Matthews v. Bowen, 879 F.2d 422, 425 (8th Cir. 1989)(minimal range of motion and muscle flexion limitations inconsistent with claim of disabling back pain).[4]  Further, Dr. Rengachery reported in of June, 2001, that plaintiff's gait was normal, that a straight leg raise test was essentially normal, that plaintiff "[s]ince surgery, has come along slowly but progressively with incremental improvement," and that plaintiff was able to drive on his own and ambulate without the use of any assistive devices.  (Tr. 258)  The record also indicates that Dr. Rengachery urged plaintiff on several occasions following his second surgery to quit smoking because it was interfering with the healing process at the fusion site.  (Tr. 159)  Despite these pleas, plaintiff continued to smoke.  Plaintiff's failure to heed Dr. Rengachery's advice is relevant to the credibility of his

---

[4]There is only one reference in the entire record to any range of motion limitations.  At a September 4, 2002, independent medical examination, it was noted that plaintiff's "[b]ack movements are markedly restricted."  (Tr. 299)  There is otherwise no mention in the record of any range of motion limitations.  Moreover, on May 1, 2003, Dr. Ashraf Mohamed examined plaintiff and reported that he exhibited "full ROM without paraspinal tenderness or spasm."  (Tr. 329)

-15-

allegations of disabling pain, and the ALJ was well within her discretion in considering this factor in determining that plaintiff's allegations were not fully credible.  See, e.g., Walton v. Secretary of Health and Human Services, 1989 WL 43915 (6th Cir.(Mich.))(claimant's failure to heed advice to lose weight in face of functional limitations exacerbated by obesity relevant to issue of plaintiff's credibility).  Further, Dr. Rengachery determined that plaintiff was capable of working despite his back condition, as did Dr. Phillip Friedman, who examined plaintiff on September 4, 2002 at the request of a private insurer.  (Tr. 256, 296-300)  In addition, plaintiff's daily activities, though they appear to be somewhat limited, are not altogether inconsistent with the ability to perform a restricted range of light and/or sedentary work.  Plaintiff testified that he went grocery shopping approximately every two weeks, that he was able to help carry the groceries into his house, and that he helped with chores around the house, such as taking out the garbage, doing laundry, and cooking.  (Tr. 386-87)  Plaintiff further indicated in the daily activity sheets he filled out in conjunction with his DIB application that he was generally capable of caring for his personal needs without assistance, that he prepared his own meals, and that he engaged in activities such as fishing, swimming, painting, and making bird houses on a weekly basis.  (Tr. 98-100)  In sum, based on the record as a whole, and giving the ALJ's credibility determination the deference it is due, the court finds that there is substantial evidence in the record to support the ALJ's finding that plaintiff's allegations of disabling pain were not entirely credible.

Plaintiff has raised one additional argument regarding the accuracy of the hypothetical. He refers in his brief to the need for an "off task" limitation.  The court struggled to ascertain the

-16-

basis of this argument due to the rather confusing manner in which it was set forth in plaintiff's brief. Suffice it to say that plaintiff has failed to demonstrate any error with respect to the absence of an "off-task" limitation.

Based on the foregoing, the court finds that the hypothetical posed by the ALJ to the VE reasonably and accurately portrayed all of plaintiff's functional limitations. Accordingly, the VE's testimony in response thereto constitutes substantial evidence to support the ALJ's determination that plaintiff is not disabled.

### V.  Conclusion

For the reasons set forth above, the court recommends that the Commissioner's motion for summary judgment be **GRANTED** and that plaintiff's motion for summary judgment be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.


                                      s/Virginia M. Morgan
                                    VIRGINIA M. MORGAN
Dated:  April 21, 2005              UNITED STATES MAGISTRATE JUDGE


**Proof of Service**

The undersigned certifies that a copy of the foregoing report and recommendation was served on the attorneys of record and the Social Security Administration by electronic means or U.S. Mail on April 21, 2005.

                              s/Jennifer Hernandez
                              Case Manager to
                              Magistrate Judge Morgan

-18-